OLE BERGSON. RESPONDENT, v. THE BUILDERS' INSURANCE COMPANY, APPELLANT.

ASSIGNMENT OF A POLICY OF INSURANCE.—The assent of the insurer is required, in order to transfer a policy of insurance to the assignee of the insured property, whether it is so stipulated in the policy or not.

IDEM.—But when there is no transfer of the property, an assignment of the policy will be upheld, as between the parties, as an equitable assignment of a contingent right to the money; and when the loss happens, it becomes a vested right, unless it is a condition of the insurance that the policy shall not be assigned without the assent of the insurer.

IDEM.—The assignment of a policy of insurance is not governed by the rules applicable to negotiable paper, but the assignee takes the policy subject to all the rights, equities and liabilities existing between the insurer and the insured.

IDEM.—CANCELLING THE POLICY FOR NON-PAYMENT OF THE PREMIUM.—A policy of insurance contained the following clause : "If, in the opinion of the company, the risk be increased by any means, or if for any other cause the company shall so elect, the company reserve to themselves the right of cancelling this policy," the premium thereon not being paid, the company gave notice to the insured (after the assignment of the policy), that unless the premium was paid on a specified day, they would cancel the policy on the following day. The money not being paid on the day mentioned, and a loss subsequently occurring by a danger insured against, in an action on the policy by the assignee, it was *Held*, that the company had the right to treat the policy as rescinded on the day designated in their notice, and that no further act was requisite on the part of the company to effect the rescission.

PREMIUM ON POLICY OF INSURANCE.—The payment of the premium is a condition precedent to the right to recover for a loss.

ACKNOWLEDGMENT IN THE POLICY OF THE PAYMENT OF THE PREMIUM.—The acknowledgment of the receipt of the premium in the policy may be contradicted.

APPEAL from the District Court of the Fourth District, City and County of San Francisco.

The case is stated in the opinion.

*Byrne & Freelon,* for Appellant

*Porter & Holladay,* and *E. P. Weeks,* for Respondent.

RHODES, J., delivered the opinion of the Court:

In the policy in this case the company "agrees to make good unto said assured, their executors, administrators *and assigns,* all such immediate loss or damage, not exceeding the sum insured," etc. This clause shows that it was contemplated that the policy might be assigned. The whole of the policy is not contained in the record, and from the portions set out it does not appear that there was any restriction upon the power of assignment of the policy by the insured, unless such restriction is found in the blank form endorsed upon the policy, providing for the assent of the insurer to the assignment of the policy to the purchaser of the property. The plaintiff claims as the assignee of the policy alone, and not as the assignee of the property; and, therefore, it is unnecessary to determine whether such blank form, without any reference to it in the body of the policy, constituted a part of the policy.

The defendant contends that the policy was not assignable without the consent of the insurer. An insurance against loss by fire is a personal contract with the owner, or other person having an insurable interest in the property insured, for the payment of the loss, not exceeding the sum mentioned in the policy, which he may sustain by the destruction or injury of the property by fire within the time specified in the policy. Since the decision in *The Saddlers' Company* v. *Badcock* (1 Atkyns, 554), it has not been doubted that the contract was a contract to indemnify the owner against loss, and not a contract that the property should sustain no injury. (*Lynch* v. *Dalzell,* 3 Brown's Part. Cases, 497.) In *Wilson* v. *Hill* (3 Met. 66), Chief Justice Shaw says that "an insurance of buildings against loss by fire, though called in popular language an insurance of the estate, is, in effect, a contract of indemnity with the owner or other person having an interest in the preservation of the buildings, as mortga-

gee, tenant or otherwise, to indemnify him against any loss which he may sustain in case they are destroyed or damaged by fire." (See, also, *Fogg* v. *Middlesex M. F. Ins. Co.* 10 Cush. 346; *The Buffalo S. E. W.* v. *The Sun M. Ins. Co.* 17 N. Y. 401.)

The insured must have an interest in the property, both at the time the contract is made, and when the loss happens, otherwise there can be no recovery on the policy; and upon this point all the authorities agree. The assignment of the policy is regulated by rules which are mainly deduced from the nature of the contract of insurance, although it may be, and usually is, limited and regulated, to some extent, by the conditions of the policy.

The policy may be assigned to the assignee of the property, and for this the assent of the insurer is required, whether it is so stipulated in the policy or not. If the estate is conveyed before the loss happens there can be no recovery upon the policy by any one, unless the policy is also assigned to the assignee of the estate with the assent of the insurer. The principle upon which a recovery is permitted in such a case is not well settled, and whether it better accords with the nature of the contract, to hold with Chief Justice Shaw, in *Wilson* v. *Hill (supra)*, that the assent of the insurer to the assignment of the property insured, and the policy, constitutes a new and original promise to the assignee to indemnify him, as provided in the policy; rather than to hold that the assent amounts to a waiver of the condition that the insured shall remain the owner of the property at the time of the loss, it is not necessary in this case to inquire. But, however this may be, it was steadily held that the action for the benefit of the assignee must be brought in the name of the assignor. (See 2 Am. L. C. 426; notes to *Carroll* v. *Boston M. Ins. Co.*)

The policy may also be assigned after the loss occurs, the assured, of course, retaining his interest in the property insured up to the time of the loss. The assent of the insurer is not essential, unless expressly required by the policy—and it is doubtful whether the insurer could restrain the assignment after the loss occurs—but the general pro-

vision in the policy forbidding an assignment except with the assent of the insurer, does not cover an assignment after the loss.

Another kind of assignment is, when the policy is assigned before the loss occurs, but without the assignment of an interest in the insured property. The assignment in this case is of that character.

A transaction of that kind is usually called an assignment of the policy, and it is so denominated when the assignment is made after the loss, and it may be convenient to refer to either transaction, by those terms. But is it in truth an assignment of the policy? Is it not rather an assignment, in the one case, of the sum that may become due, and in the other of the sum that has already become due, upon the occurrence of a loss? The contract, as we have seen, being personal, and intended for the indemnity of the insured under certain conditions and provisos, and it being indispensable to a recovery that the insured should hold an insurable interest at the time of the loss, the assignment before the loss, cannot, by possibility, have the effect to substitute the assignee in the place of the insured, or bring him into any relation with the contract, except to receive the money, if any should become due upon a loss. All the conditions and provisos on the part of the insured are still to be observed by him, and any failure on his part would defeat a recovery on the policy. When both the policy and the subject are assigned with the assent of the insurer, the assignee takes from that time the exact position of the insured. There is no substantial difference between an assignment of the policy alone, executed in the usual form, and an endorsement upon the policy, directing the insurer to "pay the within, in case of loss, to C. D.," the assignee. The nature and effect of an assignment of this character was noticed in *Bibend* v. *Liverpool, etc., Insurance Company* (30 Cal. 78), and it was regarded as a transfer of the right to receive the money that might become due upon the happening of a loss. There can be no question that such an assignment is valid between the parties, and that it will be upheld in equity. It is an equitable assignment of a contingent

right to the money; and when the loss happens it becomes, as between the parties, a vested right. (2 Story Eq. Jur. 1040; *Field* v. *Mayor of New York,* 6 N. Y. 179; 2 Am. Lead. Cas. 432 and 487; *Bibend* v. *Liverpool, etc., Insurance Company, supra;* Marsh. on Ins. 800; and see, also, cases of marine insurance, where it is held that the policy may be assigned in equity; *Wakefield* v. *Martin,* 3 Mass. 558; *Earle* v. *Shaw,* 1 John. cas. 314.)

In *Bibend* v. *Liverpool Ins. Co.,* no defense was made by the insurer, and it was not considered necessary to consider whether the assent of the insurer was essential to the validity of the assignment; but the plaintiff would not have recovered, had such assent been regarded as necessary. (See, also, *Pierce* v. *Robinson,* 13 Cal. 121; *Pope* v. *Huth,* 14 *Id.* 407.)

The insurer has a right to know, and an interest in knowing, for whom he stands as insurer. He may be willing to insure one person and unwilling to insure another, while the owner of a particular parcel of property. He may have confidence in the honesty and prudence of the one in protecting the property and thereby lessening the risk, and may have no confidence in the other. But these considerations have no application to the assignee of the policy, for it makes no difference to the insurer to whom he pays the insurance in case of a loss. If it is a condition of the insurance that the policy shall not be assigned without the assent of the insurer, the assignment would be void without such assent, or the policy would be void if such was the proviso; but in the absence of such a provision, we see no valid objection to the assignment without such assent.

The assignee holds no better position than the assignor, but he takes the policy subject to all the rights, equities and liabilities existing between the insurer and the insured. (*Wilson* v. *Hill,* 3 Met. 66.) The assignment of the policy is not governed by the rules applicable to the transfer of negotiable commercial paper, and the assignee cannot claim any benefit from the fact that he is a *bona fide* holder without notice. This brings us to the third point of the defendant, which is,

that the premium not having been paid, the defendant is not liable upon the policy. The position is not, as the plaintiff states it, that the premium not having been paid, the policy *is void*. The principal, and perhaps the only consideration, moving from the insured, is the payment of the premium, and upon that the promise of indemnity rests. The policy in this case, which is in the usual form in that respect, states that the company, in consideration of the premium therein mentioned, insures the persons named, against loss or damage by fire, etc. That both parties regarded the payment of the premium as essential, is apparent from the pleadings, for the plaintiff affirms, and the defendant denies, that the premium was paid. It is no answer to say that a credit was given to the assured for the premium, at the time the policy was issued, for the payment of the premium is a condition precedent to the right to recover for a loss. Nor is the point met by saying that the policy acknowledges the receipt of the premium—for the receipt, like that in a deed, may be contradicted. The policy is not avoided—made void *ab initio*—by contradicting the receipt of the premium (and in this respect it is like a deed of land), by showing that the consideration was not in fact paid, though the non-payment may be shown for any other purpose. (*Sheldon* v. *Atlantic F. & M. Ins. Co.* 26 N. Y. 460, reviewing cases.) The result of such proof is precisely what is stated in the policy : "But in case the premium on this policy shall not be paid in full, or the note given therefor shall not be paid, the company, in case of loss, shall not be accountable." The policy is not avoided by giving credit for the premium, but if it is not paid, the insurer is not accountable. The payment of the premium is a condition precedent to the right of action for the loss. The allegation in the complaint is material, and, if not admitted, it must be proven.

The defendant's second point is, that the policy was cancelled before the loss occurred. The policy was issued upon credit, no definite time being given, but the practice of the company was to give a credit of about thirty days. The premium was $75, and in September the insured paid $25, and the defendant having demanded the balance of the pre-

mium, and it not being paid, the defendant, on the 19th of December, notified the insured that if the balance was not paid by the 31st of December, the policy would be cancelled on the following day. The insured property was burned on the 8th of January, and on that day, after the fire, the defendant wrote over the note of entry of the policy in the book of the company, the word "cancelled." It is provided in the policy that "if, in the opinion of the company, the risk be increased by any means, or if for any other cause the company shall so elect, the company reserve to themselves the right of cancelling this policy by paying to the insured the unexpired premium *pro rata*." At the time of the notice to the insured that the policy would be cancelled, the sum they had paid was not sufficient to cover the time *pro rata* that had run on the policy. No part of the premium was required to be returned by the company to the insured. The plaintiff regards the writing of the word "cancelled" over the note of the entry of the policy in the defendant's books as the cancellation of the policy, and contends that, as this was done after the fire, it came too late. But this is too narrow a construction. The cancelling of the policy, as therein provided for, does not mean the physical cancellation of it; for the policy, being in the hands of the insured, was beyond the control of the company. The meaning of the language is, that the company might, at their election, rescind the contract of insurance upon returning the unexpired premium *pro tanto*. The entry in the books, if it is of any significance, amounts only to evidence that the company elected to treat the contract as rescinded. The company having notified the insured that, if the balance of the premium was not paid by the 31st day of December, the company would cancel the policy on the following day—that is, treat it as rescinded—and the money not having been paid by the day mentioned, the company had the right to treat it as rescinded from that time. No further act was requisite on the part of the company to effect the rescission. No money was required to be returned to the insured, for none was due them; and notice that the contract had been rescinded was not necessary to be given, for they were already informed

that it would be rescinded if they did not pay the premium, and the notice would not have enabled them to have protected themselves in any manner, under the contract, nor to have avoided or obviated the rescission.

Judgment reversed.