Continental Insurance v. G. A. & J. S. Busby.

(No. 1909.)

Error from Grimes County.    Opinion by White, P. J.

Hutcheson & Carrington, counsel for appellant.

Boone & Cobbs, counsel for appellees.

§ **101.** *Cancellation of policy of fire insurance; rules relating to; case stated.* Plaintiff in error insured the house of defendants in error for $600, issuing a policy known as the "farm instalment policy," the time covered by the policy being from May 1, 1882, to October 1, 1882. The assured executed to the company notes for the premium of insurance, one for $11.34, payable Octo-

ber 1, 1882, and one for $32, payable in instalments of $8 each on the 1st day of each October during the period of insurance; and in this late note it is provided that, in case of the non-payment of any one of the instalments, the whole amount of instalments remaining unpaid on said policy shall become immediately due and payable. The assured paid the premiums due October 1, 1882, and October 1, 1883. In January, 1884, they vacated the house, renting it to a tenant. At the time of the issuance of the policy there was no rule of the company prohibiting the assured from renting the house to be occupied by a tenant. Such a rule was, however, afterwards adopted by the company, and it seems that the assured had notice of this rule about the time they rented the house to a tenant, for they notified the agent of the company of the fact of such renting, and that the house was occupied by a tenant. The agent stated to the assured, when thus notified, that the company did not like insured houses to be occupied by tenants, but he made no other objection, and nothing was then said about canceling the policy or returning the ratable proportion of the unearned premium. Had the company desired to cancel the policy because the house was occupied by a tenant, it had the unquestionable right to do so by the terms of the policy, which provided: "This company may at any time cancel this policy, returning the unexpired premium *pro rata.*" In order to effect a cancellation by the company, it was incumbent upon it to notify the assured, before the expiration of the policy, that the same had been canceled, accompanying such notice with a tender of the amount of premium for the unexpired term. Neither of these prerequisites, standing alone, could suffice to release the company from its obligation; but both must concur before, under the law, the company could avoid its liability and terminate the contract. The notice should be, in effect, that the contract is terminated, and not that it will be terminated at a future day; and the amount to be returned should be paid

or tendered to the assured. The act of refunding and cancellation must be simultaneous. [May on Ins. §§ 67, 574; Wood on Ins. § 106; W. & W. Con. Rep. § 758.] It is clear that, in January, 1884, though the company knew that a tenant had been put into the house, it did not avail itself of the right to cancel the policy, and not having done so, the company continued liable upon such policy.

§ **102.** *Policy of fire insurance; how it may be terminated; statement of case continued.* The assured having paid the premium due October 1, 1883, this continued the policy in force to October 1, 1884, unless it should be canceled by one of the parties under the right of cancellation reserved to each party in the policy. No cancellation was made by either party, and nothing was done by either party, with reference to the matter, until September 15, 1884, when the assured received from the agent of the company a formal notice that the premium due October 1, 1884, amounted to $8, and requesting prompt payment thereof. A few days after assured received this notice, and before said instalment fell due, they saw the company's agent and stated to him that they had received said notice, and were ready then to pay the instalment if he would receive it, and then offered to pay the same. The agent replied that the company would not permit him to receive money upon premium notes where the property was occupied by tenants, and refused to receive the money upon that ground. The assured testified that they told the agent, at the time referred to, that they would go and get the money and pay the instalment if he, the agent, would say that the policy was good, and that no other offer to pay said instalment was made after the agent said he would not receive it. On October 1, 1884, when the instalment fell due, the assured did not pay the same, nor did the agent of the company return the premium obligation and demand a cancellation of the policy. Nothing more was done about the matter. On December 4 1884, the house was destroyed by fire. The

assured then demanded of the company the amount of the policy due, which the company refused to pay, and assured instituted this suit and recovered judgment for said amount.   *Held:* A risk taken by a policy of insurance may be terminated in several ways.   "It may be terminated either by expiration of the term for which the insurance was effected; by a voluntary abandonment of the contract; by mutual consent; by a cancellation by the insurer, or a surrender by the insured; in either case by some power reserved in the contract; by breach of some condition by the insured of which the insurer takes advantage; or by the happening of the contingency insured against."   [4 Wait's Act. & Def. p. 71.]   Thus, we see a policy may be forfeited by a breach of some condition contained in it, and in case of a claim that it has been so forfeited it will depend on its terms whether it becomes void at once, or the company must avoid it by some act on its part.   [4 Wait's Act. & Def. p. 72.]   One of the conditions in the policy in this case is as follows: "This company shall not be liable for any loss or damage under this policy if default shall have been made in the payment of any instalment of premium due by the terms of the instalment note."   When the loss of the property insured occurred, December 4, 1884, the premium due on the instalment note October 1, 1884, had not been paid.   There can be no question but that the payment of the premium is a condition precedent to the right to recover for the loss [Bergsen v. Builders' Ins. Co. 38 Cal. 541], unless this condition has been waived by the company, which waiver it could make.   [Baptist Church v. Ins. Co. 19 N. Y. 305.]   Or unless, by the act of the company, the specific performance of such condition had been rendered unnecessary.   A breach of this condition, therefore, by the assured, the performance thereof not having been waived, or rendered unnecessary by the act of the company, would be a termination of the risk, and the company would be no longer liable under the contract.   In such case the company would not be bound to

cancel the policy, for, the policy being in the possession of the assured, the company could not control it. Nor would the company be bound to return to the assured any premium, because all the premiums received by it had been earned. Nor would the failure of the company to surrender the premium note to the assured prevent the termination of the risk under such circumstances.

§ **103.** *Tender of payment; rules as to.* But it is contended that a tender of the premium instalment · due October 1, 1884, was made to the agent of the company by the assured. If a tender was in fact made, it was equivalent in law to a payment of the premium. [Ins. Co. v. Clopton, 7 Bush (Ky.), 179.] The evid·nce in this case in regard to a tender of the instalment due October 1, 1884, is in substance as follows: The assured testified that after they received the notice of September 15, 1884, referred to in the preceding section, and before October 1, 1884, they told the agent of the company that if he would say the policy was good they would pay said instalment, and the agent refused to accept the payment. The agent testified that he saw the assured either on the 1st, or just before, or just after the 1st of October, 1884, and they told him they would pay said instalment, and refused to accept it; that it would have been useless for them to have counted out the money to him, for he would not have received it, because of his instructions from the company not to receive money upon a policy when the house insured was occupied by a tenant. It will be noticed that the *time* when the alleged tender was made is not fixed by this evidence. On his examination in chief the agent testified that he thought the conversation with the assured about the payment occurred a day or two before the instalment was due, and the testimony of the assured also fixed the time of said conversation before October 1, 1884. Now if these facts constituted a valid and sufficient tender, it was equivalent to a payment of the instalment, and rendered the policy binding upon the company for another year unless canceled

128

under the reserved right of the company. But in crder to effect such cancellation it devolved upon the company to inform the assured in no unmistakable terms that the policy was canceled. [W. & W. Con. Rep. § 758; Ins. Co. v. Griffin & Shook, 59 Tex. 509; Ins. Co. v. Le Pert, 52 Tex. 504.] This not having been done, there was no cancellation of the policy. The question then is, Was there a tender of payment sufficient in law? "To support the issue of tender of money it is necessary for the defendant to show that the precise sum was actually produced." [2 Greenl. Ev. (13th ed.) §§ 601, 602.] But "the production of the money is dispensed with if the party is ready and willing to pay the same, and is about to produce it, but is prevented by the creditor's declaring that he will not receive it. The money or other thing must be actually at hand, and ready to be produced immediately, if it should be accepted; as, for example, if it be in the next room or upstairs; for if it be a mile off, or can be borrowed and produced in five minutes, it is not sufficient." [Id. § 606.] In this case the money was not produced, and the assured did not have it at hand, but told the agent he would go and get it, but it is not shown how far they would have to go, or how long it would take them to get it. Again, a tender, to be valid, must be absolute. If it be coupled with a condition it is not good. [Id. § 605.] In this case the offer to pay the instalment was not absolute. It was coupled with the condition that the agent would say that the policy was good. Again, a tender, to be valid, must be made at the time the money becomes due. [Id. § 607.] "It is a rule of the common law that a tender must be made on the very day on which the money is due, if that day is fixed and made certain by the contract." [Dixon v. Clark, 5 C. B. 365; Powe v. Powe, 42 Ala. 113; Toulmin v. Sager, id. 127.] A tender of money before it is due is of no avail, as the creditor is not bound to receive it before it is due according to the terms of the contract. [Lillon v. Britton, 4 Halst. (N. J.) 120; Saunders v. Frost, 5 Pick.

·267; Mitchell v. Cook, 29 Barb. 243.] When the money is not to become due on a fixed day, nor until demand is made, no tender need be made before such demand, since the money will not be due before that time. Where the money is due or payable on or before a specified day, a tender may be made at any time before the day fixed, because the debtor has the option on that day or before that time if he so elects. [7 Wait's Act. & Def. pp. 580, 581.] In this case the time of payment was absolutely fixed by the contract to be October 1, 1884, not "on or before" that day, and the evidence very clearly shows that payment was not offered on that day. Even if the alleged tender was otherwise sufficient, it would not be available because not made at the proper time. Having failed to make the tender on October 1, 1884, the assured cannot plead a waiver of payment made by the agent at a former day. What, then, is the state of the case? By the terms of the contract the assured was to pay the instalment on October 1, 1884. He did not do so, nor did he make a tender of payment. By the express terms of the contract this default of payment absolved the company from liability. This was a termination of the company's risk. It is not a question of the cancellation of the policy, but of its forfeiture by a breach thereof on the part of the assured.

§ **104.** *Specific performance of contract; party not entitled to, when.* This is a suit for the specific performance of a contract brought by parties who have themselves breached the contract. A well established and familiar rule of equity is, that a party who is himself in default is not entitled to claim specific performance. Mr. Story says, "in cases of covenants and other contracts where a specific performance is sought, it is often material to consider how far the reciprocal obligations of the party seeking the relief have been fairly and fully performed; for if the latter have been disregarded, or they are incapable of being substantially performed on the part of the party so seeking relief, or from their nature they have ceased

to have any just application by subsequent events, or it is against public policy to enforce them, courts of equity will not interfere." [1 Story's Eq. (12th ed.) § 736.]

January 30, 1886.　　　　　　Reversed and remanded.