## 32586.  WALLACE *v.* VIRGINIA SURETY COMPANY INCORPORATED.

DECIDED SEPTEMBER 23, 1949.

*J. Ralph McClelland Jr., George & John L. Westmoreland,* for plaintiff.

*Powell, Goldstein, Frazer & Murphy,* for defendant.

WORRILL, J. In this case the question for determination is, did the plaintiff, Wallace, have a contract of insurance with the defendant, Virginia Surety Company Inc., under which the Surety Company was obligated to defend him against suits arising from a collision which occurred 275 miles from Atlanta where the vehicle involved, being one listed as insured under the policy, was returning from a trip to Miami, Florida, where Miami is admittedly a distance of 725 miles from Atlanta?

"Contracts of insurance, like other contracts, are subject to the rule of law that the intention of the parties must be ascertained. 'The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction.' Code, § 20-702. See, in connection with interpretation of contracts, Code, § 20-704 (2), as follows: 'Words generally bear their usual and common signification . .' 'Insurance is a matter of contract. An insurance policy is a contract of indemnity for loss, and the intention of the parties, if it can be ascertained, must determine the sense in which the terms employed are used. This intention of the parties must be sought for in accordance with the true meaning and spirit in which the agreement was made and expressed in the written instrument, and the ordinary and legal meaning of the words employed must be taken into consideration.' *North British & Mercantile Insurance Co.* v. *Tye,* 1 *Ga. App.* 380 (58 S. E. 110)." *American Casualty Co.* v. *Fisher,* 195 *Ga.* 136 (23 S. E. 2d, 395, 144 A. L. R. 533). "Contracts of insurance, like other contracts are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary and popular sense." United States Fidelity &c. Co. *v.* Guenther, 281 U. S. 34 (50 Sup. Ct. 165, 74 L. ed. 683, 72 A. L. R. 1064).

It is elementary that an insurance company is discharged from liability under its policy if the risk is materially increased.

See *Black* v. *Fidelity Phenix Fire Ins. Co.*, 14 *Ga. App.* 510 (81 S. E. 584), and cases cited on page 514. In *Southern Mutual Ins. Co.* v. *Hudson*, 113 *Ga.* 434, 440 (38 S. E. 964), the court recognizes the principle that a change in use which materially increases the hazard of the insurance releases the insurance company from liability on a loss directly resulting as a consequence of such increase in risk.

We think that the terms of the covenants of the insurance policy are plain and unambiguous. The plaintiff agreed in the first paragraph of the quoted "commercial radius endorsement" not to drive the automobile beyond the 500 mile radius. This agreement showing on its face a consideration therefor constituted a promissory warranty on the part of the plaintiff, which when violated by him in sending his vehicle covered by the policy on a trip to Miami, Florida, beyond that radius, entitled the defendant to declare the policy, for the purposes of that trip, or operation, in its entirety, void. Such action by the plaintiff constituted a breach of the contract which released the defendant from the obligation to perform its covenants under the contract of insurance in so far as that particular trip was concerned.

We cannot say as a matter of law that a trip of 1450 miles does not subject the vehicle involved to greater hazards and risks over the entire trip than would one of only 1000 miles, or less. We think it is clear that it was the intention of the parties that the vehicles insured be not used as long-haul carriers, and that under the rules of law set forth above the liability of the insurance company under the policy was at an end when the plaintiff sent his truck beyond the 500 mile radius of Atlanta, thus increasing the hazard and risks that the truck was subject to, and that the company was not obligated to take any action to defend the plaintiff from the suits arising from a collision which occurred as a direct and proximate result of this long-haul trip. We, therefore, conclude that the evidence authorized the finding of the trial judge with respect to the right of the plaintiff to have the relief prayed for in the petition for a declaratory judgment, and the judge did not err in overruling the motion for new trial based on the general grounds only.

This case was considered by the whole court as provided by the act approved March 8, 1945 (Ga. Laws, 1945, p. 232).

54

*Judgment affirmed. Sutton, C. J., MacIntyre, P. J., and Gardner, J., concur. Felton and Townsend, JJ., dissent.*

FELTON, J., dissenting. The two endorsements on the policy are here repeated for convenience.

(1) "In consideration of the premium at which the policy is written, it is agreed that the automobile or automobiles described in the policy will be used and operated entirely within a radius of 500 miles of the place where such automobile or automobiles as described in said policy are principally garaged."

(2) "It is further agreed that the company shall not be liable for, nor will it pay any loss or claim whatsoever that results from any accident or loss occurring while the automobile or automobiles described in the policy are being operated outside of the radius of 500 miles of the place where such automobile or automobiles described in the policy are principally garaged."

Assume, for the sake of argument, that the first provision alone is unambiguous and that the legal consequence of a breach thereof would be that no vehicle involved in a trip extending over the 500 mile radius would be covered, whether before or after the vehicle got beyond the radius. The insertion of the second provision, which definitely states as a matter of agreement and not of legal consequence, what the consequence of a breach of the first provision will be, takes precedence over whatever construction the law would put on the first provision alone. The contractual statement of one consequence excludes other consequences unless they are specifically reserved. What insurance agreement would any reasonable carrier have made as to trucks going beyond the 500 mile radius in view of the second provision? He would have bought a policy providing that no vehicle would be covered while it was operating within a radius of 500 miles of Atlanta, but would be while operating beyond the 500 mile radius of Atlanta. As between two such policies which one would cover a loss within the 500 mile radius even resulting from damage by a vehicle involved on a trip beyond the 500 mile radius? The insurance company contends that it "contracted with the insured for coverage *on trips* within a 500 mile radius." If that is true, if the vehicle damaged someone on its trip to Miami, at a point 100 miles from Atlanta, the insurance company would not be liable because a trip beyond the

radius was involved. There is no issue as to increase in risk involved in this case. It is merely a question of what coverage the contract gives. Increase of risk involved in long trips may have been a motive influencing the contracting parties in the making of the contract. The liability of the company did not depend on whether the distance increased the risk but simply whether under the terms of the contract the truck was covered at the time of the injury. There was no issue as to increase of risk and no evidence to authorize such a finding by the trial court or this court. The words "while being operated outside of the radius of 500 miles" of Atlanta mean just what they say. They mean "at the time" it is being operated and that the operation beyond the limit and the injury must be concurrent. By no stretch of the imagination can it be construed to mean "while the vehicle was engaged in a trip which would carry it beyond the radius." If that is what the policy meant it could easily have been made so to state in clear and unmistakable terms. If a policy of insurance provided that it afforded no coveage if an injury occurred while the driver was intoxicated, surely it would not exclude coverage for an injury occurring while the driver was cold sober even if he had been intoxicated at the beginning of the trip. It is my opinion that the adding of the second provision rendered the first one ambiguous and went on to remove the ambiguity by explicitly stating the consequence of a violation of the first. I think that the judgment should be reversed.