489 F.2d 1393
 CANAL INSURANCE COMPANY, Plaintiff-Appellant,
v.
James C. BALDREE, Defendant-Appellee.
No. 73-3017 Summary Calendar.*
*Rule 18, 5 Cir.; see Isbell Enterprises, Inc.
v.
Citizens Casualty Company of New York et al., 5 Cir., 1970,
431 F.2d 409, Part I.
 United States Court of Appeals, Fifth Circuit.
 Feb. 20, 1974.
 
 Converse Bright, Valdosta, Ga., for Plaintiff-appellant.
 Robert B. Williamson, Sol Altman, Thomas J. Loftiss, II, Thomasville, Ga., for defendant-appellee.
 Before BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 This appeal raises the sole question whether the trial court erred in not ruling as a matter of law that the geographical limitation of use endorsement in an Insurer's[1] automobile policy excluded coverage for the occurrence in question. The trial court, declining counter motions for summary judgment because of a supposed ambiguity conflict, submitted the issue of coverage to a jury for a factual determination which impliedly held coverage existed. Whatever doubts we might have-- and they are considerable-- that this was a case for jury assessment, especially on a record that contained not a single stitch of evidence on the asserted underlying construction or the intention of the parties-- we conclude that judge, jury, or a little bit of both got to the right decision and we therefore affirm.
 
 
 2
 Insurer issued its policy to Assured (James C. Baldree) which concededly was in full force and effect on June 18, 1972, the date of the accident in question. The policy contained a geographical limitation endorsement[2] which specified the radius for each vehicle.[3]
 
 
 3
 It is undisputed that had the same policy been issued without these geographic limitations a higher premium would have been payable.
 
 
 4
 The underlying accident occurred during the last leg of a 2,000 mile trip which Assured had taken from the principal garage site in Boston, Georgia to Huntspoint, New York and back to Boston via Washington, D.C. Assured was only ten to fifteen miles from Boston, Georgia when he collided with a truck. Thus the trip itself took the vehicle well outside the restrictive 400 mile radius but the actual collision occurred within the radius.
 
 
 5
 The Insurer insists that as a matter of Georgia law[4] the terms of the policy were so clear that the trial judge should have entered summary judgment for it initially and in any event directed a verdict for it at trial. To this end Insurer presses Wallace v. Virginia Surety Co., Inc., 1949, 80 Ga.App. 50, 55 S.E.2d 259, as controlling. And well it might since it has a beguiling similarity which would, if indistinguishable, be the Erie floodlight from the latest, highest writing court,[5] Ford Motor Co. v. Mathis, 5 Cir., 1963, 322 F.2d 267, 269, and compel a reversal, a result we would reject if left to our own juridical devices on contract interpretation.
 
 
 6
 In Wallace the geographic restriction contained two elements the second[6] of which is comparable to part (ii) of Insured's clause (note 2, supra). But the first was quite different since it constituted a promissory warranty against the operation of the vehicle beyond the radius area.[7]
 
 
 7
 This is not just an effort on our part to find a distinction. The Georgia Court in positive terms emphasized the operational-use aspect, so much so that it characterized the agreement as a promissory warranty.[8]
 
 
 8
 Unlike a covenant in terms of operation use of the vehicle as in Wallace, the restriction here speaks only in terms of insurance coverage. The Assured makes no agreement not to use the vehicle beyond the radius. All he agrees to is that the 'insurance applies only while' the vehicle is operated 'within the radius.' (See part (i), note 2, supra).
 
 
 9
 Since there is no warranty as to operational use of the vehicle but only a dual provision ((i) and (ii), note 2, supra) excluding coverage, interpretation and application of this geographical restriction to terminate coverage once the perimeter was breached would produce absurd results. The mileage which could be run on any given trip, during any particular time could be virtually unlimited provided only that the radius was not exceeded. And in the course of such journeys practically every kind of driving condition could be encountered, high speed Interstate, through ways, metropolitan city traffic, hilly or flat, town or country roads.[9]
 
 
 10
 Freed from any specific Erie ruling we think the proper principle to apply is that of suspension of coverage.[10] Under that doctrine, in the absence of terms which would compel it, the policy does not come to an end. Rather coverage is suspended during the continuation of the violation of policy terms.[11] Coverage under the policy terms is therefore not destroyed but suspended as long as the specific policy violations are occurring.[12] The insurance during this time of suspension is as if no insurance policy had been in force. Travelers Protective Association v. Prinsen, 1934, 291 U.S. 576, 582, 54 S.Ct. 502, 504, 78 L.Ed. 999, 1003.
 
 
 11
 On the uncontradicted, stipulated facts the insured vehicle was on the occurrence being operated within the specified radius. Coverage was, of course, suspended during the time the vehicle traveled outside the perimeter. Once the vehicle came back within the magic circle under circumstances which do not even remotely raise a question of extraterritorial tant, cf. Henjes, note 12, supra, the insurance reattached to cover an incident occurring within the policy's geographical area. The policy was an annual one calling for an annual premium and giving annual protection. The reduced premium was accorded because during the annual period coverage might be unavailable if the vehicle went beyond the perimeter. But while in the perimeter the protection charged and paid was fully effective without taint or contamination from the vehicle's having transgressed the boundary.
 
 
 12
 Affirmed.
 
 
 
 [1]
 Canal Insurance Company
 
 
 [2]
 We have inserted bracketed numbers (i) (ii) for ease of reference:
 'In consideration of the premium charged for policy to which this endorsement is attached, it is understood and agreed that (i) insurance applies only while the respective vehicles are operated within the radius indicated for each vehicle. It is further agreed that the radius is measured from the garage location indicated on this endorsement . . . and that (ii) no vehicle is covered if operated beyond its radius . . .. It is expressly understood and agreed that occasional trips beyond the radius specified are not permitted.'
 
 
 [3]
 Vehicle Number Garage Location Radius in Miles
 
 
 [1]
 Boston, Georgia 400
 
 
 [4]
 All agree that Georgia law should apply as the policy was issued to a Georgia resident. Jacobs v. Merchants Fire Assurance Corp. of New York, 5 Cir., 1938, 99 F.2d 655, cert. denied, 306 U.S. 654, 59 S.Ct. 643, 83 L.Ed. 1052
 
 
 [5]
 We assume, without deciding for Georgia-Erie lights, this is a sufficient indicator by the highest, latest writing Court, even though for Georgia courts, judges, and lawyers it may have slight (or no) significance since with a dissent it is not a precedent. Ga.Code Ann. ch. 24-3626 (1971). Fidelity-Phenix Ins. Co. v. Mauldin, 1970, 123 Ga.App. 108, 179 S.E.2d 525, 527; Freeman v. Martin, 1967, 116 Ga.App. 237, 156 S.E.2d 511, 514
 
 
 [6]
 'The company shall not be liable for, nor will it pay any loss . . . that results from any accident or loss occurring while the . . . automobiles . . . are being operated outside the radius of 500 miles of the place where such automobiles . . . are principally garaged.'
 
 
 [7]
 'In consideration of the premium at which the policy is written, it is agreed that the automobile . . . described in the policy will be used and operated entirely within a radius of 500 miles of the place where such automobiles . . . are principally garaged.'
 
 
 [8]
 'The plaintiff agreed in the first paragraph of the quoted 'commercial radius endorsement' not to drive the automobile beyond the 500 mile radius. This agreement showing on its face a consideration therefor constituted a promissory warranty on the part of the plaintiff, which when violated by him in sending his vehicle covered by the policy on a trip to Miami, Florida, beyond that radius, entitled the defendant to declare the policy, for the purposes of that trip, or operation, in its entirety, void.' 55 S.E.2d at 261
 
 
 [9]
 As presumably a carrier of ICC exempt commodities, the vehicle could have stayed continuously on the road as it went from place to place in search of cargo for transportation and delivery. For example, the vehicle could have gone from Boston to Tallahassee, to Ocala, to Tampa, to Daytona Beach, to Jackson, to Savannah, to Charleston, to Columbia, to Charlotte, to Asheville, to Augusta, back to Columbia, to Atlanta, to Chattanooga, to Birmingham, to Meridian, to New Orleans, to Mobile, to Montgomery, to Tiffton, to Jacksonville, to Atlanta, to Tallahassee, and back to Boston, never breaching the 400 mile perimeter, for a total of approximately 3,500 miles
 
 
 [10]
 Lineas Aereas Colombianas Exp. v. Travelers Fire Insurance Co., 5 Cir., 1958, 257 F.2d 150, 155. See note 11, infra
 
 
 [11]
 Fidelity Phenix-Fire Insurance Co. v. Pilot Freight Carriers, 4 Cir., 193 F.2d 812; Hutto v. Atlantic Life Insurance Co., 4 Cir., 58 F.2d 69, 71; Ciaramitaro v. Saskatchewan Government Insurance Office, D.C.Mass., 144 F.Supp. 237, 1956 A.M.C. 928, affirmed, 1 Cir., 234 F.2d 491, 1956 A.M.C. 1400; Waters v. National Life & Accident Insurance Co., D.C.Okl., 61 F.Supp. 957; fort Worth Lloyds Insurance Co. v. Lane, Tex.Civ.App., 189 S.W.2d 78 (no writ history). See also 29 Am.Jur., Insurance, 751-757; and Annotations, 52 A.L.R. 843 and other cases cited in 257 F.2d at 155, n. 9
 
 
 [12]
 As the celebrated case of Henjes v. Aetna Insurance Co., 2 Cir., 1943, 132 F.2d 715, 719, 1943 A.M.C. 27, emphasizes, the consequences of the momentary breach of policy terms must be operationally dissipated before the coverage 'reattaches'. This is no factor here since the restriction limitation was as to radius only, not mileage, which could be unlimited if done in the 800 mile circle with the hub of Boston, Georgia