CALABRESI, Circuit Judge.
 

 The Globecon Group LLC (“New Globe-con”), a New York corporation, appeals the district court’s grant of summary judgment to the Hartford Fire Insurance Company (“Hartford”), a Connecticut corporation, in a breach of contract action. New Globecon also appeals the district court’s earlier, and at the time interlocutory, grant of Hartford’s motion to dismiss New Globecon’s claims for consequential damages and attorneys’ fees. New Globecon argues that Hartford breached its insurance agreements by failing to compensate it for alleged property damage and loss of business income suffered by New Globe-con’s predecessor in interest, The Globe-con Group, Inc. (“Old Globecon”), as a result of the September 11, 2001, terrorist attack on the World Trade Center. Hartford contends that, pursuant to a “no-transfer” clause in the insurance agreement with Old Globecon, its obligations under the policy did not survive New Globecon’s acquisition of Old Globecon in January 2002.
 

 We conclude that under New York law, an insured may, at least for some purposes and in some circumstances, make over to an assignee the indemnification it is owed under an insurance contract, and do so notwithstanding a no-transfer clause in the insurance policy. Because it cannot be determined at the summary judgment stage whether Old Globecon’s claims for property damage and for loss of its business income were of a sort that could validly be assigned to New Globecon, we vacate the district court’s grant of summary judgment on these claims. We affirm, however, the grant of summary judgment on New Globecon’s claims for business losses allegedly incurred after its acquisition of Old Globecon’s assets, and we affirm the Rule 12(b)(6) dismissal of New Globecon’s claims for consequential damages and attorneys’ fees.
 

 Background
 

 Old Globecon was a financial educational services company. It presented education
 
 *168
 
 al workshops to financial professionals, both online and through classroom instruction. In November 2000, Old Globecon entered into an agreement with Hartford for property insurance and business interruption insurance. Specifically, the policy provided compensation to Old Globecon for “direct physical loss of or damage to Covered Property” and for “the actual loss of Business Income ... sustained] due to the necessary suspension of ... ‘operations’ during the period of restoration.” As one of its “Common Policy Conditions,” the agreement stated that the “rights and duties [of the insured] under th[e] policy may not be transferred without [Hartford’s] written consent except in the case of death of an individual Named insured.”
 

 Old Globecon’s place of business was approximately 250 feet from the World Trade Center. On September 11, 2001, Old Globecon suffered physical damage to its office, its telephone and data lines, and its computer servers, and was subsequently forced to suspend its operations.
 

 The parties dispute what, exactly, happened subsequently. What is undisputed is that sometime after September 11, Hartford contacted Old Globecon and, around September 24, established two claim files, for Old Globecon’s property damage and for its business income losses respectively. Hartford contends that Old Globecon’s CEO, Gerald Kramer, and its CFO, Lorenzo Vanore, told Hartford that Old Globecon sustained minimal property damage and no loss of income as a result of the September 11 attack. Hartford asserts further that Old Globecon did not provide any itemization of its property damage and ultimately chose not to file a claim with Hartford. New Globecon insists that Old Globecon was in the process of establishing its claim at the time of its asset sale.
 

 Approximately one month after September 11, Old Globecon filed for Chapter 11 bankruptcy reorganization.
 
 [1]
 
 In January 2002, Starweaver Venture Partners I, LLC (“Starweaver”) entered into an asset purchase agreement with Old Globecon. The agreement provided that Starweaver would acquire “substantially all of the assets” of Old Globecon, including “all right, title and interest” of Old Globecon in,
 
 inter alia,
 
 “[a]ll of [Old Globecon’s] insurance policies and insurance claims and other claims against third parties for any matter .... ” Asset Purchase Agreement art. l.l(l).
 
 [2]
 
 Nothing in the record indicates that Hartford either consented to, or was informed of, the purchase agreement at the time.
 

 The purchase agreement was approved by the Bankruptcy Court for the Southern District of New York on January 15, 2002. Soon after, Starweaver changed its name to The Globecon Group LLC (called “New Globecon” herein) and relocated Old Globecon’s offices to midtown Manhattan.
 

 On March 14, 2002, New Globecon, through counsel, wrote a letter to Hartford asserting a claim “on behalf of Globecon” for $6,506,500. This amount included $68,000 for property damage, $5,718,000 for business interruption and lost business income, and $720,500 for “extra expenses” relating to Globecon’s costs in mitigating lost business income, in relocating to midtown, and in litigating a dispute with its
 
 *169
 
 previous landlord. The letter did not mention Old Globecon’s bankruptcy reorganization, or Starweaver’s purchase of Old Globecon’s assets.
 

 On April 12, 2002, New Globecon’s chairman and CEO, Paul Siegel, sent an e-mail message to Hartford’s underwriter, BK International, for the purpose of changing the name of the insured on Old Globecon’s Hartford policy to The Globecon Group LLC. Attached to the e-mail were,
 
 inter alia,
 
 the asset purchase agreement between Old Globecon and Starweaver, and the order of the bankruptcy court approving the acquisition. Three days later, Hartford issued an endorsement changing the name of the insured as requested. Hartford thereafter accepted insurance premiums from New Globecon.
 

 Having received no response from Hartford to the letter of March 14, 2002, Siegel sent another letter on April 25, 2002. In the second letter, Siegel referenced Old Globecon’s Chapter 11 reorganization and complained of Hartford’s non-responsiveness to New Globecon’s prior letter.
 

 A series of communications followed in which each party attempted to substantiate the losses. In an internal document dated June 24, 2002, Hartford preliminarily set business income loss for “the insured” at $230,000, and physical damage at $66,000. On October 24, 2002, New Globe-con submitted to Hartford a Sworn Statement in Proof of Loss, in the amount of $1,878,917. This amount included $1,777,010 in business interruption losses, $97,077 in property damage, and $5,000 in “claim preparation costs.”
 

 Hartford responded to New Globecon’s claim with a November 15, 2002 letter stating that it “neither accepted nor rejected” New Globecon’s proof of loss, and would need additional time to investigate “both the accuracy of the claim and ... the question of whether any part of the claim is covered under the policy.” In that letter, as in all of its official correspondence with New Globecon, Hartford inserted language reserving its rights under the policy and under applicable law.
 

 New Globecon filed the original complaint in this action on January 2, 2003. On or about February 14, 2003, Hartford sent a letter to New Globecon reporting the results of its investigation. Hartford concluded that New Globecon was not insured under any Hartford policy, citing the “no-transfer” provision of its agreement with Old Globecon. Hartford stated, moreover, that it had fixed Old Globecon’s loss at $10,502.75, which represented property damage alone. Hartford enclosed a check in that amount with its letter, again reserving its “rights to contest any obligation whatsoever” that it might have to New Globecon.
 

 New Globecon filed an amended complaint on March 6, 2003. In the amended complaint, New Globecon claimed that, through February 2002, “Globecon” sustained physical damage as well as business income losses and extra expenses amounting to $1,879,017, as a direct result of the September 11 attack. Amended Complaint ¶¶ 15, 21. New Globecon argued further that Hartford had breached an implied covenant of good faith and fair dealing through the delays in responding to New Globecon’s communications and through Hartford’s alleged failure to adhere to the language of the policy. New Globecon claimed consequential damages, ranging from forced layoffs and attrition, to cut-backs in sales and marketing efforts, to the use of inadequate office equipment, all stemming from Hartford’s alleged breach of the implied covenant of good faith and fair dealing.
 
 Id.
 
 ¶ 64.
 

 Hartford then moved, successfully, to dismiss New Globecon’s claims for consequential damages and attorneys’ fees. In
 
 *170
 
 an order dated September 16, 2003, the district court held that consequential damages are not available in an insurance action under New York law unless the alleged injury was covered by a specific contractual provision, and that attorneys’ fees are not available in an affirmative action brought by an insured to settle its rights under an insurance policy.
 

 On July 13, 2004, the district court granted Hartford’s motion for summary judgment on New Globecon’s remaining claims. The court ruled that, because Hartford did not consent in writing to Old Globecon’s assignment of its policy to New Globecon, it did not have insurance obligations towards New Globecon. The court also rejected New Globecon’s contention that Hartford had waived its defenses to coverage through consent, waiver, or es-toppel.
 

 New Globecon appeals the district court’s September 16, 2003 grant of Hartford’s motion to dismiss, as well as its July 13, 2004 grant of Hartford’s motion for summary judgment. As to summary judgment, New Globecon argues in principal part that the presence of a no-transfer clause in an insurance agreement does not preclude recovery for the assignee when the transfer of the policy occurred
 
 after
 
 the loss for which the assignee seeks recovery. New Globecon also argues that genuine issues of material fact exist as to whether, by treating New Globecon as the insured after April 2002, Hartford either consented to the assignment or is equitably estopped from asserting any defense to coverage. Finally, New Globecon argues that the district court misapplied New York law in dismissing its claims for consequential damages and for attorneys’ fees.
 

 Discussion
 

 I. Breach of the Insurance Agreement
 

 Summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c). At the summary judgment stage, “the judge’s function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.”
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Our review of a district court’s grant of summary judgment is
 
 de novo. Peck v. Baldwinsville Cent. Sch. Dist.,
 
 426 F.3d 617, 625 (2d Cir.2005).
 

 The district court granted summary judgment to Hartford based on the no-transfer provision in its policy with Old Globecon.
 
 Globecon Group, LLC v. Hartford Fire Ins. Co.,
 
 2004 WL 1574692, No. 03-civ.-0023, 2004 U.S. Dist. LEXIS 13130 (S.D.N.Y.2004). The enforceability of a no-transfer clause in an insurance contract is limited under New York law. As a general matter, New York follows the majority rule that such a provision is valid with respect to transfers that were made prior to, but not after, the insured-against loss has occurred.
 
 See Travelers Indemnity Co. v. Israel,
 
 354 F.2d 488, 490 (2d Cir.1965) (“Although assignment of the policy prior to loss [is] ineffective without the consent of the insurer, no such approval [is] necessary for an assignment of the right to the proceeds after the loss.” (footnote omitted));
 
 SR Int’l Bus. Ins. Co. v. World Trade Ctr. Props.,
 
 375 F.Supp.2d 238, 245-46 (S.D.N.Y.2005) (“Under [no-transfer] provisions, any unauthorized assignment of a property insurance policy before a loss occurs is invalid [but] [a]fter a loss occurs ... a party to an insurance contract may assign its right to accrued
 
 *171
 
 insurance proceeds to another party, even in the face of express policy language prohibiting assignments.” (citations omitted)).
 

 The idea behind the majority rule is that, once the insured-against loss has occurred, the policy-holder essentially is transferring a cause of action rather than a particular risk profile. As the Ninth Circuit has explained:
 

 Risk characteristics of the insured determine whether the insurer will provide coverage, and at what rate. An assignment could alter drastically the insurer’s exposure depending on the nature of the new [policyholder]. “No assignment” clauses protect against any such unforeseen risk. When the loss occurs before the transfer, however, the characteristics of the [assignee] are of little importance: regardless of any transfer the insurer still covers only the risk it evaluated when it wrote the policy.
 

 Northern Ins. Co. of N.Y. v. Allied Mutual Ins. Co.,
 
 955 F.2d 1353, 1358 (9th Cir. 1992);
 
 see
 
 3 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 35:7 (3d ed. 2004) (“[Assignment before loss involves a transfer of a contractual relationship while the assignment after loss is the transfer of a right to a money claim.”). The suggestion is that the accrual of an insurance claim extinguishes the insurer’s interest in the risk profile of the insured, thereby converting the claim into, in effect, a chose in action.
 
 See Henkel Corp. v. Hartford Accident & Indem. Co.,
 
 29 Cal.4th 934, 129 Cal.Rptr.2d 828, 62 P.3d 69, 79 (2003) (“[AJllowing assignment of pretransfer benefits neither increases the insurer’s risk nor alters the insurer’s defense burden.”); Theresa L. Leming, 6 Am.Jur.2d § 51 (2d ed.2004) (discussing the general assignability of a chose in action).
 

 The district court acknowledged the general rule permitting transfer of a cause of action notwithstanding a “no-transfer” clause in an insurance policy but held this rule inapplicable to certain claims for business interruption insurance. “[C]overage for lost business income,” the district court stated, “generally requires a more complex calculation than many other types of insurance coverage.”
 
 Globecon Group, LLC,
 
 2004 WL 1574692, at *9, 2004 U.S. Dist. LEXIS 13130, at *32. The court held that, because claims for lost business income are more difficult to substantiate than claims for property damage, assigning such claims involves a considerable amount of risk for the insurance company. That is, according to the district court, Old Globecon’s obligation to substantiate its claim is, in effect, a non-delegable duty, the assignment of which “would require Hartford to seek verification of the claim from New Globecon, a third-party to the Policy with, at best, second-hand information about Old Globecon’s property damage and income loss when Hartford contracted to acquire that information from the damaged party itself.”
 
 Id.
 
 at at *10, 2004 U.S. Dist. LEXIS 13130, at *35. Noting that “an insurer simply issuing a check to a different party may not be the only consequence of all post-loss assignments,”
 
 id.
 
 at *9, 2004 U.S. Dist. LEXIS 13130, at *32, the district court held that a no-transfer clause will be upheld not only when a loss has yet to occur, but whenever the transfer exposes the insurer to additional risk.
 

 We agree with the district court that, under New York law, a no-transfer clause may, in certain unusual circumstances, remain valid as to some pre-transfer claims even though the loss occurred before the transfer. For example, a claim for loss of business income may well not be validly assignable to the lost income of the
 
 assignee,
 
 at least where such lost income is uncertain at the time of the assignment. Thus, in
 
 Holt v. Fidelity Phoenix Fire Ins.
 
 
 *172
 

 Co.,
 
 273 A.D. 166, 76 N.Y.S.2d 398 (1948), the Appellate Division did not honor a movie theater owner’s assignment of business interruption insurance to a new owner who took over shortly after a fire forced the theater to close. The court held that the insurer’s obligation under the policy “was to reimburse the [original owner] for the loss which
 
 it
 
 sustained, arising by reason of
 
 its
 
 loss of profits, etc., because an interruption of
 
 its
 
 business to be measured by
 
 its
 
 business experience before the loss and of
 
 its
 
 probable experience thereafter.”
 
 Id.
 
 at 399 (emphases in original). Because the new owner “was no party to this policy,” an assignment to him was “void.”
 
 Id.
 

 More recently, a district court in the Southern District of New York applying New York law held that an insured who suffered property damage and made claims for its own losses could not subsequently assign its business interruption policy to a third party. The court held that the assignee “may maintain an action for [the original insured’s] losses that accrued as of the date of the assignment” but was not “entitled to those business losses which had yet to occur at the time of the assignment.”
 
 Bronx Entm’t LLC v. St. Paul’s Mercury Ins. Co.,
 
 265 F.Supp.2d 359, 363 (S.D.N.Y.2003).
 
 But see S.R. Int’l Bus. Ins. Co.,
 
 375 F.Supp.2d at 249 (distinguishing between claims for lost rental income, which is “fixed or easily ascertained” at the time of the assignment, and those for lost business income, which “inherently require speculation about future earnings”).
 

 The reasoning of these cases does not, however, seem to us to oblige an insured to present a claim before executing a transfer, on pain of losing its rights under a clause in an insurance policy prohibiting the insured from transferring its rights and duties under the policy without the consent of the insurer. Hartford relies on federal cases applying New York law that have drawn a distinction between the assignment of a party’s rights under a contract, which is generally permitted, and a delegation of a party’s duties, which generally requires the consent of the obligee.
 
 See, e.g., Viacom Int’l Inc. v. Tandem Prods., Inc.,
 
 526 F.2d 593, 596 n. 6 (2d Cir.1975);
 
 Contemporary Mission, Inc. v. Famous Music Corp.,
 
 557 F.2d 918, 924 (2d Cir.1977);
 
 see also
 
 N.Y. UCC § 2-210(1) (“A party may perform his duty through a delegate unless otherwise agreed or unless the other party has a substantial interest in having his original promisor perform or control the acts required by the contract.”).
 

 None of the cases Hartford cites, however, maintains this distinction between rights and duties in the context of insurance contracts. Indeed, the Appellate Division in
 
 Holt
 
 allowed that, while Holt could not, as an assignee, present his own business interruption claim post-transfer, he could present a claim for property damage or lost rental value.
 
 Holt,
 
 76 N.Y.S.2d at 399-400. This distinction tracks the one Judge Mukasey drew in
 
 S.R. Int’l Bus. Ins. Co.
 
 between fixed losses, such as rental streams in place prior to loss, and speculative losses, such as profits. Judge Mu-kasey considered the former assignable because they had “accrued” at the time of loss, even though the proceeds of the rents had been assigned to a different entity with, presumably, the same “duty” as the previous owner to substantiate the claim.
 

 The distinction Judge Mukasey made seems to us to be the correct one under New York law, and indeed under insurance law generally.
 
 See generally Imperial Enters. Inc. v. Fireman’s Fund Ins. Co.,
 
 535 F.2d 287, 292 (5th Cir.1976) (noting that under Georgia law an insurance company’s liability under a policy expires only “ ‘if the risk is materially increased’ ”)
 
 *173
 
 (quoting
 
 Wallace v. Virginia Surety Co.,
 
 80 Ga.App. 50, 55 S.E.2d 259 (1949));
 
 Paxton & Vierling Steel Co. v. Great Am. Ins. Co.,
 
 497 F.Supp. 573, 582 (D.Neb.1980) (holding that the relevant consideration is whether the insurer “is prejudiced in the way of risk exposure by the Court’s refusal to enforce [a] policy’s anti-assignment language”). Nevertheless, we readily concede that Hartford’s ingenious argument has not been directly rejected in New York cases that we have found. As a result, we might be tempted, as is now common practice in our circuit, to certify the question to the New York Court of Appeals.
 
 See, e.g., Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int’l B.V. v. Schreiber,
 
 407 F.3d 34 (2d Cir.2005). But New York permits certification to its highest court only when the question certified controls the outcome of the case before us.
 
 See Galdamez v. Keane,
 
 394 F.3d 68, 76 n. 5 (2d Cir.2005) (citing N.Y. Court Rules § 500.17(a)). And, at this stage of the proceedings, we cannot say that the result in the instant case turns on whether the duty to present an insurance claim for an accrued loss may be delegated.
 
 [3]
 

 The district court held that New Globe-con could not fulfill Old Globecon’s duty to present claims for property damage and lost business income. In a footnote, the district court acknowledged a disputed issue of fact as to whether Old Globecon had itself presented a claim for property damage or lost business income, but stated that “[notwithstanding these factual disputes, it is clear that the record contains no evidence that a perfected claim of Old Globecon’s existed at the time it sold substantially all of its assets to New Globe-con .... For purposes of this motion, it is appropriate to conclude that at most Old Globecon was pursuing a claim, the value of which was never determined by either the insured or the insurer, prior to its asset sale to New Globecon.”
 
 Id.
 
 at *10, 2004 U.S. Dist. LEXIS 13130, at *34 n. 19.
 

 We disagree that it is appropriate at the summary judgment stage to conclude that Old Globecon itself had not presented a claim. As the district court indicated, the parties dispute whether a claim was submitted on September 24, 2001. In the record is a communication on that date from a Hartford claim adjuster to Old Globecon in which the adjuster says, “I am acknowledging the loss which you recently reported to us.... Should you wish to discuss the adjustment of this claim, please feel free to contact me directly.” Moreover, it is undisputed that Hartford subsequently established two separate “claim files,” one for Old Globecon’s property damage and one for its business interruption losses. The record also includes an October 16, 2001, e-mail sent from Vanore to the Hartford claims adjuster stating that the physical damage was minor, but that business interruption was “a different story.” In addition, New Globecon claims that there was a meeting held on December 17, 2001, between Kramer and a Hartford accountant in which the accountant was given financial statements to assist with the evaluation of Old Globecon’s business interruption claim. Prior to September 11, Old Globecon’s principals had projected fourth quarter 2001 revenues at $2.5 million and, as mentioned, an internal
 
 *174
 
 Large Loss Report suggests that Hartford itself set Old Globecon’s business income loss at $230,000, and its property damage at $66,000.
 

 Hartford identifies seven unmet “duties” that it suggests are necessary to present a claim properly. These duties are (1) to give Hartford prompt notice of the loss or damage, including a description of the property involved; (2) promptly to give Hartford a description of how, when, and where the loss occurred; (3) to provide to Hartford, at Hartford’s request, inventories of the damaged and undamaged properties; (4) to permit Hartford to inspect the property and records substantiating the loss or damage; (5) to permit Hartford, at Hartford’s request, to question the insured under oath about any matter relating to the insurance or claim, including books and records; (6) to send to Hartford a signed, sworn statement of loss containing information Hartford requests to investigate the claim within 60 days of such request; and (7) to cooperate with Hartford in the investigation and settlement of the claim.
 

 Even assuming that each and every one of these duties would be encompassed in an effective prohibition-on-transfer-of-duties clause, the extent to which the duties listed by Hartford were fulfilled is not evident on this record. Thus, the evidence suggests that Hartford was provided with prompt notice of the loss. New Globecon argues—and Hartford does not appear to dispute—that Hartford did not request either a complete inventory or a sworn statement of loss from Old Globe-con. And Hartford does not appear to have asked to question any Old Globecon officers under oath prior to Old Globecon’s asset transfer to Starweaver. The information Hartford had as of June 2002 was evidently sufficient for Hartford to investigate and reach an approximation of Old Globecon’s losses, and New York courts have long held that “where there is an evident loss, the insured should not be deprived of indemnity merely because it may be difficult to fix the amount of the loss with absolute precision.”
 
 Lite v. Firemen’s Ins. Co.,
 
 119 A.D. 410, 104 N.Y.S. 434, 436 (1st Dep’t 1907). In short, the dispute over whether Old Globecon itself satisfied the duties that Hartford asserts could not be delegated under the insurance policy is precisely the sort of “dispute[] over facts that might affect the outcome of the suit under the governing law” that ordinarily precludes the entry of summary judgment.
 
 Anderson, 477
 
 U.S. at 248, 106 S.Ct. 2505.
 

 Hartford points out that the two individuals best positioned to substantiate Old Globecon’s claims, Kramer and Vanore, now state that no claim was made and no losses sustained. But deposition testimony in the record suggests that Kramer was dissatisfied with the terms of Old Globe-con’s asset purchase agreement with Star-weaver. Deposition Transcript of Michael A. Spetz, at 174. And it is undisputed that Kramer was compensated for his cooperation with Hartford.
 
 Id.
 
 at 176. An affidavit submitted by New Globecon’s CEO asserts that Vanore offered to sell testimony to
 
 New Globecon
 
 before he indicated (inconsistently with earlier statements,
 
 see
 
 J.A. 645), in a deposition now cited by Hartford, that Old Globecon sustained no losses. This evidence raises doubts as to the credibility of Kramer’s and Vanore’s most recent avowals. And credibility, in the ordinary course of things, is for a fact-finder to evaluate.
 
 See Rule v. Brine, Inc.,
 
 85 F.3d 1002, 1011 (2d Cir.1996) (“Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.”);
 
 see also United States v. Persico,
 
 832 F.2d 705, 717 (2d Cir.1987) (“[W]e have confidence in the
 
 *175
 
 jury’s ability to assess counsels’ arguments about the inherent unreliability of ‘purchased’ testimony, and to evaluate the witness’ credibility accordingly.”).
 

 If Old Globecon sufficiently presented a claim to Hartford prior to its asset sale, then, under clear New York law, any proceeds of that claim were validly transferred to New Globecon pursuant to the terms of the asset purchase agreement. Because the question of whether Old Globecon presented such a claim is a genuine issue of material fact, we vacate the district court’s grant of summary judgment on New Globecon’s claims for Old Globecon’s property damage and business interruption losses. If the jury (or other fact-finder) determines that Old Globecon did not present a claim (or did so in part, but still delegated to New Globecon some significant duties pursuant to that claim) then the issue of what, if any, duties may validly be transferred, under New York law, under a no-transfer clause like the one before us will become determinative. At that time, Hartford’s interesting contention can be evaluated by a federal appellate court and, if appropriate, can be certified to the New York Court of Appeals. For then the issue of whether New Globe-con is barred, as a matter of law, from presenting Old Globecon’s claims for property damage or business interruption insurance that accrued prior to the asset sale would be determinative.
 

 II. Consent, Waiver, and Estoppel
 

 New Globecon argues that, even if the no-transfer clause barred Old Globecon from transferring its claims, in whole or in part, without Hartford’s consent, there are genuine issues of material fact as to whether Hartford in fact consented, and as to whether Hartford, through its conduct, either waived its right to object to the transfer or is estopped from objecting. If Hartford consented, either in fact or in effect, to the transfer of the policy to New Globecon, then the question of whether the no-transfer clause prohibited New Globe-con from presenting a claim for Old Globe-con’s losses accrued prior to the asset sale—or indeed for losses accruing after the asset sale—would be moot.
 

 New Globeeon’s contention that Hartford consented to the policy transfer is, however, without merit. New Globecon points to two purported indicia of Hartford’s consent: (1) the endorsement issued by Hartford and dated April 15, 2002, changing the name of the insured on the existing policy to “Globecon LLC;” and (2) a Hartford underwriter’s assent to the statement that, when Hartford becomes aware of a change in ownership, the old policy is cancelled outright and a new policy issues. But even if Hartford’s endorsement of a name change did constitute consent to an assignment of rights and duties under the policy that was endorsed in April 2002, that policy was not the one at issue in this case. The policy at issue was the one signed with Old Globecon; and that policy lapsed in January 2002. The district court held correctly that, even if consent could be demonstrated by the endorsement, there is no reason whatever to believe that such consent would apply retroactively.
 
 Globecon Group, LLC,
 
 2004 WL 1574692, at *4, 2004 U.S. Dist. LEXIS at *15-*16;
 
 see McCormack v. Sec. Mut. Life Ins. Co.,
 
 220 N.Y. 447, 116 N.E. 74, 78 (1917) (noting that “a reinstated policy is
 
 to
 
 be viewed as a new contract”);
 
 Ludwig v. Jersey City Ins. Co.,
 
 48 N.Y. 379, 382 (N.Y.1872) (“Every renewal of a policy constitutes a new contract .... ”).
 

 As to waiver, New Globecon argues that Hartford waived any right it had to rely on the no-transfer clause by (1) endorsing the name change on the 2002-2003 policy; (2) collecting premiums from New
 
 *176
 
 Globecon; (3) renewing a policy in New Globecon’s name; (4) failing expressly to raise the no-transfer clause as a coverage bar until February 2003; (5) seeking documentation of Old Globecon’s insurance claims from New Globecon; (6) interviewing New Globecon’s employees under oath during Hartford’s investigation; (7) referring to New Globecon as “the insured” in Hartford’s internal communication; and (8)paying $10,502 to New Globecon for Old Globecon’s computer damage.
 

 This argument is frivolous. Under New York law, waiver of rights under a contract “should not be lightly presumed.”
 
 Gilbert Frank Corp. v. Fed. Ins. Co.,
 
 70 N.Y.2d 966, 525 N.Y.S.2d 793, 520 N.E.2d 512, 514 (1988). Specifically, a party seeking to demonstrate waiver must put forward evidence of a “clear manifestation of intent” to waive by the other party.
 
 Id.
 
 A waiving party must have “lulled [the other party] into sleeping on its rights under the insurance contract.”
 
 Id.
 
 The evidence New Globecon proffers falls well short of a manifestation of any alleged intent by Hartford to waive its rights. To the contrary, Hartford repeatedly and expressly reserved its rights in its communications with New Globecon. Such reservations preclude arguments both as to waiver and as to equitable estoppel.
 
 See Hutton Constr. Co. v. County of Rockland,
 
 52 F.3d 1191, 1193 (2d Cir.1995);
 
 Raniolo v. Travelers Indent. Co.,
 
 279 A.D.2d 514, 718 N.Y.S.2d 884, 884 (2d Dep’t.2001);
 
 see also Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP,
 
 277 F.Supp.2d 245, 254 (S.D.N.Y.2003) (“When an insurer reserves its right to deny coverage, estoppel and waiver may not be inferred.”).
 
 [4]
 

 III. Consequential Damages and Attorneys’ Fees
 

 The district court dismissed under Rule 12(b)(6) New Globecon’s claims for consequential damages, including attorneys’ fees, resulting from Hartford’s refusal to compensate it for Old Globecon’s losses. We affirm the district court’s decision.
 

 As a general matter, a nonbreaching party may recover damages beyond those which naturally and directly flow from the breach only when “such unusual or extraordinary damages [were] brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting.”
 
 Kenford Co. v. County of Erie,
 
 73 N.Y.2d 312, 540 N.Y.S.2d 1, 537 N.E.2d 176, 178-79 (1989). There is significant New York authority for the proposition that a party seeking consequential damages must identify specific contractual provisions demonstrating that recovery of such damages was contemplated by the parties.
 
 See Sweazey v. Merchants Mut. Ins. Co.,
 
 169 A.D.2d 43, 571 N.Y.S.2d 131, 133 (3d Dep’t 1991);
 
 High Fashions Hair Cutters v. Commercial Union Ins. Co.,
 
 145 A.D.2d 465, 535 N.Y.S.2d 425, 427 (2d Dep’t 1988). Although some authority suggests that no specific provision is required,
 
 see, e.g., Sabbeth Indus. v. Penn. Lumbermens Mut. Ins. Co.,
 
 238 A.D.2d 767, 656 N.Y.S.2d 475, 477 (3d Dep’t 1997), such damages must, at a minimum, comport with the intent of the parties to the contract. Since—as we have held in §§ I and II of this opinion— New Globecon cannot be treated as a par
 
 *177
 
 ty to the insurance contract which is the basis for this suit, and since New Globecon cannot sue under that original insurance contract for post-transfer damages, the consequential damages sought are not recoverable.
 
 [5]
 

 Finally, we affirm the district court’s dismissal of New Globecon’s request for attorneys’ fees. Under New York law, “an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy.”
 
 New York Univ. v. Cont'l Ins. Co.,
 
 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 772 (1995).
 

 Conclusion
 

 We AFFIRM the district court’s grant of summary judgment on New Globecon’s claims to the extent that those claims encompass New Globecon’s loss of business income. To the extent that New Globe-con’s claims encompass claims that accrued before the transfer of Old Globe-con’s assets to New Globecon, and, in particular, to the extent they include some claims that arguably were presented by Old Globecon prior to the sale of its assets, we VACATE and REMAND for further proceedings consistent with this opinion.
 
 [6]
 
 We furthermore AFFIRM the district court’s dismissal of New Globe-con’s claims for consequential damages and attorneys’ fees. Each party will bear its own costs.
 

 [1]
 

 . According to Vanore's deposition testimony, he had discussed filing for bankruptcy with an attorney as early as February or March of 2001. Deposition Transcript of Lorenzo Va-nore, at 50.
 

 [2]
 

 . The purchase price of the agreement was $270,000 cash, plus 3% of New Globecon’s gross revenues from January 2003 to December 2004. Old Globecon's revenue from 2000 to 2002 was approximately $2 million, 3% of which is $60,000.
 

 [3]
 

 . Even if we were to conclude that a no-transfer clause could in some circumstances, and after a loss, cover the duty to
 
 present
 
 an insurance claim, we would have to consider whether the no-transfer clause before us did so, in the light of New York’s general
 
 contra proferentem
 
 rule applied to insurance contracts.
 
 See Hugo Boss Fashions, Inc. v. Fed. Ins. Co.,
 
 252 F.3d 608, 615 (2d Cir.2001) (citing
 
 Handelsman v. Sea Ins. Co.,
 
 85 N.Y.2d 96, 623 N.Y.S.2d 750, 647 N.E.2d 1258, 1260 (1994)).
 

 [4]
 

 . Accordingly, we affirm the district court’s grant of summary judgment to the extent that the court’s decision encompasses any claim for New Globecon’s loss of business income that accrued
 
 after
 
 the asset sale. For the reasons given in § I of this opinion, the no-transfer clause in the insurance agreement validly bars such a claim.
 
 See Holt,
 
 273 A.D. 166, 76 N.Y.S.2d 398. And, for the reasons given above, Hartford is neither estopped, nor has consented to waiver of that no-transfer clause.
 

 [5]
 

 . Indeed, New Globecon conceded at oral argument that, if it is barred by the no-transfer clause from making a claim for its own loss of business income, then,
 
 ipso facto,
 
 it cannot make a claim for consequential damages.
 

 [6]
 

 . We express no opinion on whether any claims, in fact, accrued before New Globe-con’s purchase of Old Globecon's assets,