HOOTEN, Judge
(concurring in part, dissenting in part).
I respectfully concur in part and dissent in part. I agree with the majority'that the district court improperly granted summary judgment to SUMA, but unlike the majority, I would vacate the district court’s judgment on jurisdictional grounds. Because the Minnesota No-Fault Act provides the exclusive remedy and procedure for the payment of medical expenses arising out of an ■ automobile accident, and the no-fault act clearly provides that the medical expenses here were subject to mandatory arbitration, I would hold that the district court lacked subject matter jurisdiction and that the judgment-in favor of SUMA should be vacated. Even if the issue of the validity of the assignments by the policyholders to SUMA of their claim to medical expenses were * properly before us, I disagree with the majority’s conclusion that those assignments are invalid. In accordance with well-established common law principles regarding the interpretation and validity of anti-assignment provisions in insurance contracts, I would conclude that the post-loss assignments by these policyholders to SUMA of their right to claim medical expenses under their insurance; policies _are valid and enforceable.
I.
Regardless of whether the assignments are valid, the initial inquiry in this case is whether the district court had subject matter jurisdiction to resolve the merits of SUMA’s claims arising from the assignments. The majority unnecessarily analyzes what would typically be a coverage issue regarding the validity of the assignments when this matter, involving SUMA’s claim for medical expenses, could be resolved on jurisdictional grounds. See Lip- *29 ha v. Minn. Sch. Emps. Ass’n, Local 1980, 550 N.W.2d 618, 622 (Minn.1996) (“[Judicial restraint bids us to refrain from deciding any issue not essential to the disposition of the particular controversy before us.”).
The no-fault act provides for níandátory arbitration “of all cases at issue where the claim at the commencement of arbitration is in an amount of $10,000 or’ less against any insuréd’s reparation obligor for no-fault benefits or comprehensive or collision damage coverage.” Minn.Stat. § 65B.525 subd. 1 (2014). “The statute thereby deprives district courts ⅛ subject matter jurisdiction over a certain type of dispute claims for ... benefits of $10,000 or less.” III. Farmers Ins. Co. v. Glass Serv. Co., 683 N.W.2d 792, 800 (Minn.2004); see also In re the Claims for No-Fault Benefits Against Progressive Ins. Co., 720 N.W.2d 865, 871 (Minn.App.2006) (“[S]ubjeet-matter jurisdiction arises from the monetary amount of the claim..:. ”), review denied (Minn. Nov. 22, 2006). SUMA sought to récover no-fault benefits from American Family in district court, not in mandatory arbitration.
Here, each of the pertinent policyholders’ claims for medical expenses was for $10,000 or less, and once American Family denied their claim's, the policyholders’ solé right under the’no-fault act was to pursue no-fault proceeds in mandatory arbitration. Minn.Stat. § 65B.525, subd. 1. Each insured did so, received an arbitration award, and received’payment from American Family. SUMA did'not move to vacate or modify any Of the awards. As assignee, SUMA stood in the shoes of the policyholders and had only the procedural rights that they had, namely, to submit their claims to mandatory arbitration, which rights accrued when the medical expenses were billed. See III. Farmers, 683 N.W.2d at 803 (“An assignment operates to place" the" assigned in the shoes of the assignor,’ and provides the assignee with the samé legal rights as the assignor had before assignment.”). Under the plain language of the no-fault act, SUMA did not have the right to recover no-fault proceeds in district court.
In an attempt to avoid this jurisdictional limitation, SUMA required the policyholders to grant, along with the assignment, a contractual lien to SUMA with respect to their charges. But, the exclusive remedy for the payment of these disputed medical expenses under the no-fault act is arbitration. Nothing in the no-fault act allows a medical vendor to attach a lien to a claim that has been assigned. To the extent that the Uniform Commercial' Code is inconsistent with the no-fault act, see Minn. Stat. §’ 336.9-309(5) (2014), the no-fault act prevails because it provides the exclusive means for obtaining payment of medical expenses under the personal injury protection provisions of an automobile insurance policy. See Minn.Stat. § 65B.01, subd. 1 (2014) (explaining the purpose of the no-fault act). By requiring the policyholders to grant a lien, and by bringing ;this action in district court, SUMA thwarted several purposes of the no-fault act, namely: to assure “prompt payment” for medical treatment, “to speed the administration of justice, to ease the burden of litigation on the courts of this state, and to create a system of small claims arbitration to decrease the expense of and to simplify litigation.” MinmStat. § 65B.42(l)-(4) (2014).
SUMA appears to argue that because medical providers have to pay the insured’s attorney for the- recovery of these expenses in arbitration, the no-fault act unfairly reduces the payment of their bills, and it is for’this reason that it obtains a UCC lien so that it can be assured of full payment. But, the no-fault act clearly does not provide for SUMA’s hybrid no- *30 fault/UCC lien approach to the payment of medical bills and we, as an error-correcting court, are not authorized to rewrite the no-fault act to allow such an approach. See Tereault v. Palmer, 413 N.W.2d 283, 286 (Minn.App.1987) (“[T]he task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court.”), review denied (Minn. Dec. 18, 1987).
The district court lacked subject matter jurisdiction to hear any disputes regarding the payment of these medical expenses, and the district court’s judgment in favor of SUMA should be vacated.
II.
Even if the issue of the validity of the assignments needed to be decided, I disagree with the majority’s conclusion that the assignments are invalid. The assignments here are not “pre-loss” assignments as that term is used in easelaw, and the timing of when “loss” occurred for other purposes under the no-fault act is irrelevant here.
Minnesota common law, consistent with the majority rule, distinguishes between the pre-loss assignment of an insurance policy from a policyholder to another individual, and the assignment to a third party of the right to claim post-loss proceeds of an insurance policy. See Star Windshield Repair, Inc. v. W Natl Ins. Co., 768 N,W.2d 346, 350 n. 6 (Minn.2009); id. at 351 & n. 1 (G.B. Anderson, J., concurring). It is well settled that “[assignment, after loss, of the proceeds of insurance does not constitute an assignment of the policy, but only of a claim or right of action on the policy.” Windey v. N. Star Farmers Mut. Ins. Co., 231 Minn. 279, 283, 43 N.W.2d 99, 102 (1950); see Aetna Cas. & Sur. Co. v. Valley Nat'l Bank of Ariz., 15 Ariz.App. 13, 485 P.2d 837, 839 (1971) (stating that an anti-assignment clause is invalid “when an assignment is made by an insured after the liability-causing event has occurred”); 6B John Alan Appleman & Jean Appleman, Insurance Law and Practice § 4269 (rev. ed. 1979) (“[Ajfter a loss has occurred and the rights under the policy have accrued, an assignment may be made without the consent of the insurer, even though the policy prohibits assignments. Under such circumstances, the assignment of a right under the policy is not regarded as a transfer of the policy itself, but rather of a chose in action.”). Accordingly, “[s]uch an assignment does not void the policy under a provision that if it is assigned without the insurer’s consent it shall become void.” Windey, 231 Minn, at 283, 43 N.W.2d at 102. The rationale for such distinction is that the assignment of post-loss proceeds claims to a third party “does not affect the bargain struck between the insurer and the insured.” Star Windshield, 768 N.W.2d at 350 n. 6 (majority).
However,- if a policyholder assigns the policy itself to another individual, this may alter the insurer’s risk, thereby potentially exposing the insurer to greater risk than what it bargained for under the policy with the original policyholder. Because of this unforeseen greater risk caused by the assignment of the policy itself, anti-assignment clauses are included in insurance policies in order to insulate the insurer from the unforeseen risks associated with a new policyholder. See Star Windshield, 768 N.W.2d at 351 (concurrence).
Under the common law, then, the key to analyzing the validity of an anti-assignment clause is determining whether “the insured-against loss has occurred.” See Globecon Grp., LLC v. Hartford Fire Ins. Co., 434 F.3d 165, 171 (2d Cir.2006). “[Ojnce the insured against loss has occurred, the policy-holder essentially is transferring a cause of action rather than a particular risk profile.” Star Winch *31 shield, 768 N.W.2d at 351 (quotation omitted). After an insured-against loss has occurred under the policy, there is no additional risk to the insurer if the original policyholder then assigns its.-right to any claims or' proceeds under the policy to another. Globecon, 434 F.3d at 171. The insured-against “loss” under the policy is “the occurrence of the condition triggering liability under the policy.” Conrad Bros. v. John Deere Ins. Co., 640 N.W.2d 231, 236-37 (Iowa 2001) (noting the “great weight of authority” supporting the majority rule).
Here, according to the personal injury protection provisions of the insurance policy issued by American Family, the event triggering coverage of an “eligible injured person” under the policy is bodily injury “caused by an accident due to the maintenance or use of a motor vehicle as a vehicle.” Bodily injury is defined under the policy as “bodily injury to or sickness, disease or death of any person.” Eligible injured person means “[t]he named insured or relative who sustains bodily injury while occupying, or while a pedestrian as the result of an accident involving any motor vehicle or motorcycle,” as well as “[a]ny other person who sustains bodily injury while occupying, or while a pedestrian as a result of an accident involving the insured motor vehicle.”
Contrary to the majority’s holding, the no-fault act did not abrogate these common law principles regarding the interpretation and validity, of anti-assignment clauses in insurance policies. There is a presumption, that statutes are consistent with the common law. Staab v. Diocese of St. Cloud, 813 N.W.2d 68, 73 (Minn.2012). Therefore, unless the legislature expressly declares or clearly indicates that a statute is meant to abrogate or modify a common law rule, the statute is construed so “as to harmonize with the existing body of law.” Bloom v. Am. Express Co., 222 Minn. 249, 254, 23 N.W.2d 570, 574 (Minn.1946) (quotation omitted).
In interpreting the no-fault act, we are required to “ascertain and- effectuate the intention of the legislature.” Minn.Stat. § 645.16 (2014).
The first, step in statutory interpretation is to determine whether the statute’s .language, on its face, is ambiguous. In determining whether a statute is ambiguous, ,we will construe the statute’s words and phrases according to their plain and ordinary meaning. A statute is only ambiguous if its language is subject to more than one reasonable interpretation. .., When we conclude that a statute is unambiguous, • our role is to enforce the language of the statute and not explore the spirit or purpose of the law. Alternatively,- if we conclude that the language in a statute is ambiguous, then we may consider the factors set forth by the [(legislature for interpreting a statute.
Christianson v. Henke, 831 N.W.2d 532, 536-37 (Minn.2013) (quotations and- citations omitted).
The no-fault act is silent on the issue of assignments. Although the no-fault. act refers to a medical expense “loss,” Minn. Stat. § 65B.54, subd. 1 (2014), it is unclear from the language.of the statute whether this statutory reference is relevant to our determination of whether, the policyholders’ assignment to SUMA of their right to claim proceeds of their insurance policy is valid under the insurance policy and the common law. Therefore, I conclude that the no-fault act’s use- of the term “loss” is ambiguous.-in this context. When dealing with ambiguity in a statute, we may ascertain legislative intent by considering, among other matters, the occasion and necessity for the law, the wrong the law seeks to remedy, the goal of the statute, *32 and the consequences of a particular interpretation. Minn.Stat. • § 645.16 (2014). Moreover, in ascertaining legislative intent, we are to assume that the legislature did not intend a result that is “absurd, impossible of execution, or unreasonable.” MinmStat. § 645.17(1) (2014).
The no-fault act is a remedial statute, which was enacted “to relieve the severe economic stress of uncompensated victims of automobile accidents” by providing “prompt payment of specified'basic economic' loss benefits to victims” and “to encourage appropriate medical and rehabilitation treatment of the automobile accident victim by assuring prompt payment for such treatment.” MinmStat. § 65B.42(1), ’(B). “[Rjemedial Statutes must be liberally construed for the purpose of accomplishing ■ their objects.” State v. Indus. Tool & Die Works, Inc., 220 Minn. 591, 604, 21 N.W.2d 31, 38 (1945). Therefore, we must liberally construe the act to the extent necessary to ensure that the severe economic distress of uncompensated accident victims is alleviated and that victims are able to obtain appropriate medical and rehabilitation treatment for their injuries.
By holding that the anti-assignment clause in American Family’s policies rendered these assignments invalid, the majority violates the canon of construction that requires that the statute be construed so as to harmonize with the common' law principles regarding the interpretation and application of anti-assignment clauses. There is nothing in the no-fault act that indicates that the legislature intended for the no-fault act to change the well-established common law regarding the validity of an assignment of a claim or right of action 'on the policy after the insured-against loss had occurred. These were not assignments or transfers of the policy from a policyholder to another individual, which would subject the insurer to the potentially increased risk of insuring a different policyholder. In each ease that is before1 us, prior to the assignment of a right tó a claim for medical expenses, the event that triggered coverage for personal injury protection, i.e., bodily injury resulting from an automobile accident, had already occurred. When the policyholders assigned their right to a claim under the no-fault act to SUMA immediately prior to the provision of medical treatment, American Family incurred no greater risk or exposure than it would have had without the assignment. The majority’s holding would result in our “rewriting insurance policies” and ignoring our “long-standing approval of permitting assignment of choses in action.” Star Windshield, 768 N.W.2d at 351.
Further, it is highly doubtful that the legislature, in enacting a system of “[cjlaims [practices” for the “[pjayment of basic 'economic loss benefits,” ever intended- the result advocated by the majority. MinmStat. § 65B.54, subd. 1. The no-fault act provides that “[bjasic economic loss benefits are payable monthly as loss, accrues” and that “[l]oss accrues not when injury occurs, '.but as ... medical ... expense is incurred.” Id. Benefits are due within 30 days after the insurer .“receives reasonable proof of the fact and amount of loss realized” and may be paid by the insurer “directly to persons supplying products,' services or ■ accommodations to the claimant.”- Id. As is evident from the language'utilized by the statute, its purpose is simply to provide when a right of claim accrues for the purpose of ensuring prompt payment. ■ There is nothing in the statute that indicates thát the legislature intended to ' change the underlying requirement of what triggers personal injury protection coverage under an automobile insurance policy, i.e., bodily injury as a result- of an automobile accident. Under the majority’s interpretation, an’assignment to *33 a medical provider immediately before medical treatment or even before the med-icar expense is reduced to a written bill would be rendered invalid, but an assignment immediately after delivery of the bill would be valid. Certainly, this absurdity was never intended or contemplated by the legislature in its enactment of the no-fault act.
Finally, the majority’s interpretation actually undermines the goal and intent of the no-fault act. This interpretation of the no-fault act would ultimately result in the refusal of medical providers to treat victims of automobile accidents without, prior payment. Understandably, under these circumstances, medical providers may be reluctant to underwrite or front, medical treatment for injured victims when there is no assurance that the insured will sign a post-billing assignment of his or her right to personal injury'protection benefits under the policy. Such a result would undermine the express- purpose of the no-fault act of assuring that automobile accident victims may obtain appropriate medical and rehabilitation treatment by assuring prompt payment for such treatment.
Based upon these well-established common law principles regarding the interpretation and validity of anti-assignment provisions, as well as the goals and purposes of the no-fault act, I would conclude that, once coverage was triggered under the policy because of bodily injury as the result of an automobile accident, the anti-assignment clause in American Family’s policy did not affect the validity of the policyholders’ assignments to SUMA of their right to payment of their medical expenses under the no-fault act.
Nevertheless, because the policyholders, and later SUMÁ, were entitled to seek relief solely by way of mandatory arbitration, the district court lacked subject matter jurisdiction to hear any disputes regarding the payment of these medical expenses. For this reason, I would vacate the district court’s judgment in favor of SUMA for lack of subject matter jurisdiction.